763 S.E.2d 19

ASHLEY II OF CHARLESTON, L.L.C., Plaintiff,

v.

PCS NITROGEN, INC., Defendant–Third–Party Plaintiff,

v.

Ross Development Corporation; Koninklijke DSM N.V.; DSM Chemicals of North America, Inc; James H. Holcombe; J. Holcombe Enterprises, L.P.; J. Henry Fair, Jr.; Allwaste Tank Cleaning, Inc.; Robin Hood Container Express; and the City of Charleston, Third–Party Defendants.

Appellate Case No. 2013–001766.

No. 27420.

Supreme Court of South Carolina.

Heard March 4, 2014.

Decided July 23, 2014.

Rehearing Denied Sept. 25, 2014.

Wm. Howell Morrison, of Haynsworth Sinkler Boyd, P.A., of Charleston, John B. Williams, of Cozen O'Connor, of Washington, D.C.; and Sandra Kaczmarczyk, of Alton Associates PLLC, of Washington, D.C., for Defendant/Third–Party Plaintiff.

G. Trenholm Walker, and Daniel S. "Chip" McQueeney, Jr., both of Pratt–Thomas Walker, P.A., of Charleston; and T. McRoy Shelley, III, of Rogers Townsend & Thomas, PC, of Columbia, for Third–Party Defendant.

Justice KITTREDGE.

We certified the following question from the United States District Court for the District of South Carolina:

Does the rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts, unless such intention is

expressed in clear and unequivocal terms, apply when the indemnitee seeks contractual indemnification for costs and expenses resulting in part from its own strict liability acts?

In the context of the underlying claim in federal court, we answer the certified question, "no."

## I.

Central to this certified question is the operation of a fertilizer-manufacturing site (Site) in Charleston, South Carolina, that spanned approximately forty-three acres, and was owned at various times by the parties. In 1906, Ross Development Corp.[1] purchased the Site and operated a fertilizer manufacturing facility until 1966. The fertilizer manufacturing process led to arsenic, lead, and acid contamination at the Site.

In 1966, Ross sold the Site to PCS Nitrogen, Inc.[2] The purchase agreement included an indemnity provision, which stated: "[Ross] agrees to indemnify and hold harmless [PCS] in respect to all acts, suits, demands, assessments, pr[o]ce[e]dings and cost and expenses resulting from any acts or omission[s] of [Ross] occurring prior to the closing date...."

During the approximately twenty years PCS owned the site, it contributed to the environmental contamination by continuing to manufacture fertilizer and disturbing the contaminated soil during various demolition activities. In 2003, Ashley II of Charleston, Inc. (Ashley II) purchased 27.62 acres of the Site. Since that time, Ashley II has incurred substantial costs in remediating the environmental contamination.

In July 2008, Ashley II filed a complaint against PCS seeking a declaration of joint and several liability under the Comprehensive Environmental Response, Compensation, and Liability Act[3] (CERCLA) due to costs of the environmental

---

1. Ross Development Corp. was formerly known as Planters Fertilizer & Phosphate Co. (Planters). We refer to Ross and Planters collectively as "Ross."

2. PCS Nitrogen, Inc. is the successor-in-interest to Columbia Nitrogen Corp. (CNC). We refer to PCS and CNC collectively as "PCS."

3. 42 U.S.C. §§ 9601–9675 (2006). "CERCLA imposes strict liability on all entities that have owned or operated 'facilities' at which hazardous

cleanup at the Site. PCS asserted federal statutory contribution claims against Ross and others, contending those named were also liable for environmental cleanup costs. Additionally, PCS asserted a third-party indemnification claim against Ross based on the indemnity provision in the 1966 purchase agreement, seeking indemnification for attorney's fees, costs, and litigation expenses incurred in establishing that Ross contributed to the contamination.

After a bench trial, the district court found that PCS was liable to Ashley II for environmental cleanup costs and PCS was entitled to indemnification for attorney's fees and costs from Ross. Following Ross's motion for reconsideration, the district court vacated its indemnification order and certified the above question to this Court.

## II.

We have long recognized "that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers,* 355 S.C. 104, 111, 584 S.E.2d 375, 379 (2003) (quotations and citation omitted). In this case, we are asked whether this "negligence rule" also bars indemnification in cases where the liability is strict and not fault-based. Based on the public policy underlying the negligence rule, the nature of CERCLA liability, and our law respecting the freedom of parties to contract, we would decline to extend the negligence rule to bar indemnification in this case.

### A.

The policy basis for the negligence rule is simple—barring indemnification when the indemnitee is at fault for the dam-

___

substances were 'disposed.'" *Anderson Bros. v. St. Paul Fire & Marine Ins. Co.,* 729 F.3d 923, 929 (9th Cir.2013) (footnote and citations omitted). "Congress enacted CERCLA 'to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.'" *Litgo New Jersey Inc. v. Comm'r N.J. Dep't of Envtl. Prot.,* 725 F.3d 369, 378 (3d Cir.2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 602, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009)).

ages serves to deter negligent conduct in the future, for the indemnitee will know that the indemnification agreement will not save it from liability if it fails to act with due care. *Murray v. Texas Co.*, 172 S.C. 399, 402, 174 S.E. 231, 232 (1934). However, we have declined to apply the negligence rule to bar indemnification, even in the context of a negligence action, when application of the rule would have no deterrent value. *See S.C. Elec. & Gas Co. v. Utils. Constr. Co.*, 244 S.C. 79, 82–90, 135 S.E.2d 613, 614–19 (1964) (rejecting an independent contractor's attempt to invoke the negligence rule where "the only negligence chargeable to the [indemnitee] ... was the negligence of the [indemnitor-independent contractor] itself," for the application of the negligence bar to indemnification under the circumstances would not further the purpose of the negligence rule barring indemnification).

We find that barring indemnification in this case would not serve the deterrent purpose of the negligence rule. The nature of CERCLA liability is fundamentally not a fault-based determination. *See United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988) ("The traditional elements of tort culpability ... simply are absent from [CERCLA]. The plain language ... extends liability to owners of waste facilities regardless of their degree of participation in the subsequent disposal of hazardous waste."). Of course, relative fault does factor into the ultimate liability calculus in the form of CERCLA's contribution provision. *See* 42 U.S.C. § 9613(f) (2006) (authorizing one potentially responsible party to sue another for equitable contribution). Contribution, however, is merely a way to equitably apportion costs *after* liability has been established. Application of the negligence rule would not serve to deter liability in the first instance because CERCLA liability is not premised on identifying particularized harm caused by certain parties, but instead is imposed upon classes of parties based on their status, typically as owners of the contaminated premises. *Nurad, Inc. v. William E. Hooper & Sons*, 966 F.2d 837, 841 (4th Cir.1992).

Moreover, the indemnification agreement was limited to any liability attributable to Ross up to the date of the 1966 closing—there was no prospective, post–1966 closing liability for which Ross could be responsible under the indemnification provision. The agreement did not permit indemnification

from Ross for any liability (by way of negligence, strict liability or otherwise) after the 1966 closing. We similarly observe that PCS seeks to enforce the indemnification provision in strict accordance with its terms by limiting its claim to fees and costs associated with Ross's CERCLA liability incurred because of its ownership and operation of the Site prior to the 1966 closing.[4] Enforcing the indemnification provision under these circumstances in no manner runs afoul of the negligence rule; we would enforce the agreement.

## B.

Such a finding comports with our longstanding regard for parties' freedom to contract. *See Huckaby v. Confederate Motor Speedway, Inc.*, 276 S.C. 629, 630, 281 S.E.2d 223, 224 (1981) ("[P]eople should be free to contract as they choose."). While the freedom to contract is not without limitation, "[s]trong policy considerations . . . generally permit business owners to allocate risk amongst themselves as they see fit." *Constable v. Northglenn, LLC*, 248 P.3d 714, 718 (Colo.2011) (citations omitted). An indemnity agreement is an ideal method for businesses to allocate costs and expenses that may arise in future litigation. Indeed, the parties to the 1966 agreement were sophisticated business entities that engaged in an arms-length purchase agreement and chose to include an indemnity provision in the contract. We find no basis to invoke the negligence rule to trump the plain language of the indemnity agreement.[5]

---

4. Because PCS does not seek to recover its fees and costs associated with CERCLA liability attributed to contamination occurring after the 1966 closing, PCS is not seeking "contractual indemnification for costs and expenses resulting in part from its own strict liability acts," as the certified question suggests. We acknowledge the record before us may be incomplete. If, based on the current record, we have misapprehended the scope of PCS's indemnification claim against Ross, we invite a rehearing petition to specifically identify where in the record PCS seeks indemnification from Ross for any acts or omissions of Ross occurring after the 1966 closing date. The 1966 indemnification agreement, to be sure, does not allow for indemnification for any acts or omissions by Ross occurring after the 1966 closing date. Such result is a function of the clear terms of the indemnification agreement, not an expansion of the negligence rule.

5. We note the narrow reach of today's holding. Our holding is limited to determining that the negligence rule—which would operate as a bar

## III.

Because the deterrent purpose underlying the negligence rule would not be served by its application under these circumstances, we find that the negligence rule does not bar indemnification in the underlying CERCLA action. We answer the certified question, "no."

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., PLEICONES, BEATTY, JJ., and Acting Justice Eugene C. Griffith, Jr., concur.

to enforcement of the indemnification provision—does not preclude contractual indemnification under the facts of this CERCLA action. We make no finding regarding how PCS's indemnification claim should be resolved, for such a finding is reserved to the district court. And finally, we do not permanently close the door on the possibility that in a different context there may a sound basis for applying the negligence rule outside of the traditional parameters of a negligence action.