THOMAS, J.:
**642 This case involves the alleged negligent construction of a condominium project in Charleston, which resulted in numerous construction defects. Appellant Superior Construction Corporation (Superior) appeals the circuit court's partial grant of summary judgment in favor of Respondent The Muhler Company, Inc. (Muhler), arguing the circuit court erred by misconstruing its argument and finding the relevant contracts between the parties did not require Muhler to indemnify Superior for Superior's own concurrent negligence. We affirm.
FACTS
The plaintiff, Concord and Cumberland Horizontal Property Regime (Regime), filed this action in March 2010, alleging the existence of construction defects resulting in water intrusion **643 in the condominium units.[1] Specifically, Regime asserted numerous defects with the windows and doors, including design and installation defects. Regime alleged Superior was the general contractor who subcontracted with Muhler for installation of the windows and doors. Regime claimed Weathershield, Inc. designed, manufactured, marketed, sold, and distributed the windows and exterior doors used in the construction.
Superior admitted it was the general contractor and also claimed Weathershield manufactured and supplied the windows and exterior doors. Superior claimed Muhler installed all of the windows and doors as a subcontractor for Superior. Superior alleged it was "entitled by contractual provisions, to the fullest extent permitted by law, full indemnity from" its various subcontractors, including Muhler. Superior also claimed it was entitled to equitable indemnification. However, Muhler denied it was contractually required to indemnify Superior.
Superior and Muhler executed a contract (the Subcontract) in May 2006. The Subcontract called for Muhler to provide labor and materials for the installation of all windows and exterior doors. Article 12.1 of the Subcontract contained an indemnification clause:
12.1 SUBCONTRACTOR'S PERFORMANCE. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect, the Contractor (including its affiliates, parents and subsidiaries) and other contractors and subcontractors and all of their agents and employees from and against all claims, damages, loss and expenses, including *169 but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work provided that
(a) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting there from, to the extent caused or alleged to be caused in whole or in any part by any negligent act or **644 omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder.
(b) such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this [a]rticle [12.1].
In early 2007, after the water intrusion around the windows and doors began, Superior, Muhler, and Weathershield entered into a second contract (the 2007 Agreement). The 2007 Agreement acknowledged some of the windows and doors did not comply with certain warranties. The 2007 Agreement stated it did not amend or affect "any party's contractual rights and responsibilities except to the extent specifically stated." Weathershield agreed to perform testing of some of the windows and remedy any defects in the design of the windows. Muhler agreed "to remedy any defects in the installation of the windows." The 2007 Agreement contained another indemnification clause relating to Muhler.
11. In the event either Superior or Concord and Cumberland, LLC are sued hereafter by or on behalf of any subsequent owner, alleging that one or more of the windows and/or doors do not comply with the original and amended [c]ontract [d]ocuments, or are defectively installed[,] Muhler agrees to unconditionally indemnify both Superior and Concord and Cumberland, LLC against these allegations and will pay all damages (including reasonable [attorney's] fees) incurred by either or both, as determined by a court of competent jurisdiction or award of arbitration, liability incurred by either or both as consequence including, but not limited to, costs and [attorney's] fees, any remedial costs of expert witnesses, cost of arbitration and all other damages incurred.
Following years of litigation and extensive discovery, Superior and Muhler reached separate settlements with Regime and the individual owners. Superior settled for $775,000 and also claimed approximately $630,000 in attorney's fees and expenses related to its defense of the window and door claims.
**645 Following these settlements, Superior pursued its indemnity claims against Muhler. In May 2014, Superior filed a motion for partial summary judgment. Superior claimed it was entitled to contractual indemnity from Muhler for the settlement amount along with attorney's fees and expenses.[2] Specifically, Superior argued the Subcontract, "as modified by the terms of the [2007 Agreement]," required Muhler to indemnify Superior, and the "right to indemnity was not lessened by any concurrent negligence of or causation by Superior."
In response, Muhler moved for partial summary judgment. Muhler argued neither the Subcontract nor the 2007 Agreement obligated it to indemnify Superior for Superior's "own wrong-doing." Muhler claimed such an indemnity clause must be clear and unequivocal in the contract, and the contracts at issue failed to meet that burden.
The circuit court found Superior, in order to prevail, must show the language in the Subcontract or the 2007 Agreement "can only be interpreted to reach the result that the parties intended to indemnify the indemnitee for the indemnitee's own negligence." The circuit court found the Subcontract's language did not clearly and unequivocally require Muhler to indemnify Superior for Superior's own negligence and limited indemnification *170 to damages resulting from the work Muhler performed. Likewise, the circuit court determined the 2007 Agreement did not clearly and unequivocally require Muhler to indemnify Superior for Superior's own negligence. The circuit court also found, to the extent the 2007 Agreement purported to indemnify Superior "unconditionally," it was unconscionably broad. Thus, the circuit court denied Superior's motion for partial summary judgment and granted Muhler's motion to the extent Muhler sought a declaration the Subcontract and 2007 Agreement did not require Muhler to indemnify Superior for Superior's own negligence. This appeal followed.
ISSUES ON APPEAL
1. Did the circuit court err by applying the clear and unequivocal standard based on its improper conflation of indemnification **646 for Superior's own negligence with indemnification for Superior's sole negligence?
2. Did the circuit court err by finding the indemnity clause in the Subcontract did not require Muhler to indemnify Superior for Superior's own concurrent negligence?
3. Did the circuit court err by failing to reconcile the Subcontract and the 2007 Agreement and construe them in conjunction when determining whether Muhler was obligated to indemnify Superior for Superior's own concurrent negligence?
STANDARD OF REVIEW
The circuit court should grant a motion for summary judgment when the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. An appellate court "reviews the grant of a summary judgment motion under the same standard as the [circuit] court." Montgomery v. CSX Transp., Inc. , 376 S.C. 37, 47, 656 S.E.2d 20, 25 (2008).
SOLE VS. CONCURRENT NEGLIGENCE
Superior argues the circuit court erred by conflating the idea of sole negligence and concurrent negligence under the broad term of "own negligence." Superior claims this error led the circuit court to apply an improper standard when interpreting the indemnification clause in the contracts at issue. Specifically, Superior argues because it was seeking indemnification for its concurrent negligence and not its sole negligence, the indemnification clauses were subject to the general rules of contract construction, rather than strict construction and the heightened standard of clear and unequivocal. Muhler argues the circuit court properly applied the clear and unequivocal standard when interpreting the indemnification clauses at issue. Muhler claims this heightened standard applies whether Superior is seeking indemnification for Superior's sole or concurrent negligence.
We find the circuit court properly applied the clear and unequivocal standard because it applies whether Superior sought indemnification for its sole or concurrent negligence. Our courts "have consistently defined indemnity as 'that form of compensation in which a first party is liable to pay a second **647 party for loss or damage the second party incurs to a third party.' " Laurens Emergency Med.Specialists, PA v. M.S. Bailey & Sons Bankers , 355 S.C. 104, 109, 584 S.E.2d 375, 377 (2003) (quoting Campbell v. Beacon Mfg. Co. , 313 S.C. 451, 454, 438 S.E.2d 271, 272 (Ct. App. 1993) ). "A right to indemnity may arise by contract (express or implied) or by operation of law as a matter of equity between the first and second party." Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp. , 336 S.C. 53, 60, 518 S.E.2d 301, 305 (Ct. App. 1999) (quoting Town of Winnsboro v. Wiedeman-Singleton, Inc. (Winnsboro I ), 303 S.C. 52, 56, 398 S.E.2d 500, 502 (Ct. App. 1990), aff'd , 307 S.C. 128, 414 S.E.2d 118 (1992) ( Winnsboro II ) ).
"Contractual indemnity involves a transfer of risk for consideration, and the contract itself establishes the relationship between the parties." Rock Hill Tel. Co. v. Globe Commc'ns, Inc. , 363 S.C. 385, 389, 611 S.E.2d 235, 237 (2005).
Typically, courts will construe an indemnification contract "in accordance with the rules for the construction of contracts generally." Campbell , 313 S.C. at 453, 438 S.E.2d at 272. However, when an indemnity clause purports "to relieve an indemnitee *171 from the consequences of its own negligence," our case law requires strict construction of the clause. Laurens , 355 S.C. at 111, 584 S.E.2d at 378-79. "Indeed, most courts agree with the basic rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." Fed. Pac. Elec. v. Carolina Prod. Enters. , 298 S.C. 23, 26, 378 S.E.2d 56, 57 (Ct. App. 1989).
In Federal Pacific , the respondent leased a building to the appellant for commercial purposes, and subsequently, an electrical switchgear exploded and injured an employee of the appellant. Id. at 25-26, 378 S.E.2d at 57. The respondent manufactured and installed the switchgear, and the employee sued only the respondent based solely on products liability causes of action, including negligence. Id . at 26, 378 S.E.2d at 57. The employee did not make any allegations against the appellant. Id . The respondent demanded indemnification from the appellant based on a clause in the lease agreement. Id .
**648 This Court found the indemnity clause was subject to the clear and unequivocal standard because the respondent was seeking indemnification for its "own negligence." Id . Although, it appears the respondent was seeking indemnification for its sole negligence because the employee made no allegations against the appellant, the Court did not distinguish between sole and concurrent negligence. Id .
In Laurens , a hospital contracted with Laurens Emergency Medical Specialists, P.A. (EMS) to provide emergency services for the hospital. 355 S.C. at 106, 584 S.E.2d at 376. Under the contract, EMS was responsible for hiring physicians and the hospital was responsible for employing personnel for support and administrative work. Id . The hospital employed Anita Raines as support staff, and she stole thousands of dollars from EMS resulting in EMS suing the hospital. Id . at 106-07, 584 S.E.2d at 376. EMS sought indemnification from the hospital for Raines's thievery based on a clause in the contract. Id . at 107, 584 S.E.2d at 376. The hospital defended by claiming EMS was contributorily negligent because it failed to have procedural safeguards against theft or to detect theft. Id . First, our supreme court found EMS could not recover under the indemnification clause because a third party claim is a prerequisite to indemnification, unless the contract "explicitly contemplate[s]" indemnification for second party claims. Id . at 110-11, 584 S.E.2d at 378. Next, the Laurens court examined whether the allegation of EMS sharing in the negligence impacted whether the hospital was obligated to indemnify EMS. Id . at 111-12, 584 S.E.2d at 378-79. The court found strict construction of the indemnity clause was required because EMS claimed the clause could relieve it "from the consequences of its own negligence." Id . Although the court did not expressly discuss a distinction between sole and concurrent negligence, it applied the clear and unequivocal standard despite the hospital's claim that EMS was partially negligent in allowing Raines to steal the money. Id . Thus, the Laurens court applied the clear and unequivocal standard to EMS's attempt to obtain indemnification for its concurrent negligence.
Furthermore, our supreme court has recently declared deterrence is the policy basis for the heightened standard of **649 clear and unequivocal. Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc. , 409 S.C. 487, 490-91, 763 S.E.2d 19, 21 (2014).
The policy basis for the negligence rule is simple-barring indemnification when the indemnitee is at fault for the damages serves to deter negligent conduct in the future, for the indemnitee will know that the indemnification agreement will not save it from liability if it fails to act with due care.
Id . The Ashley II court noted our supreme court has declined to apply the negligence rule[3] "when application of the rule would have no deterrent value." Id . at 491, 763 S.E.2d at 21.
*172 In this case, the circuit court properly applied the clear and unequivocal standard because the standard applies when an indemnitee seeks indemnification for its own concurrent negligence. Based on our reading of Laurens , the clear and unequivocal standard applies any time an indemnitee is seeking indemnification for its negligence, whether sole or concurrent. Thus, the standard applies in this case to Superior's claim for indemnification for its concurrent negligence. Furthermore, applying this heightened standard serves the policy goal of encouraging Superior to act with due care in the future because the indemnity clause may not shield it from liability. See Ashley II , 409 S.C. at 490-91, 763 S.E.2d at 21 (explaining the policy basis for the negligence rule is to serve as a deterrent to future negligent conduct). The goal of deterrence is applicable whether the indemnitee is seeking indemnification for its sole or concurrent negligence. We fail to find any important distinction between sole and concurrent negligence with regard to our supreme court's policy basis for applying the clear and unequivocal standard.
Additionally, Superior's reliance on this Court's decision in Campbell is misplaced. Although the Campbell court did not expressly state it was applying the clear and unequivocal standard, it ultimately found the indemnitee could recover for its concurrent negligence "under the clear terms of the contract." 313 S.C. at 455, 438 S.E.2d at 273. Thus, Campbell relied on the "clear" terms in the contract and, in effect, applied the clear and unequivocal standard. Accordingly, the **650 circuit court in this case properly applied the clear and unequivocal standard to Superior's attempt to obtain indemnification for its concurrent negligence.
INDEMNIFICATION CLAUSE IN THE SUBCONTRACT
Under South Carolina law, a contract that purports to indemnify an indemnitee for the indemnitee's sole negligence is unenforceable. See S.C. Code Ann. § 23-2-10 (2007). Superior argues the circuit court erred by finding the indemnification clause in the Subcontract did not require Muhler to indemnify Superior for Superior's concurrent negligence. After parsing the language in the indemnification clause in detail, Superior concludes the language in article 12.1 "broadly assumes a duty to indemnify for anything connected to Muhler's scope of work under the Subcontract." Next, Superior claims article 12.1(a) "narrows the scope of Muhler's indemnification obligation to property damage caused by Muhler's sole or concurrent negligence." Superior asserts the last phrase in article 12.1(a) "clarifies that when the negligence is concurrent, Muhler assumes a duty to indemnify for the concurrent negligence" of Superior.
Muhler argues the circuit court properly determined the Subcontract's language failed to meet the heightened burden of showing, in clear and unequivocal terms, it was required to indemnify Superior for Superior's concurrent negligence. Muhler claims the Subcontract obligates it to indemnify Superior only for claims and expenses caused by Muhler's negligent acts or omissions. Muhler contends the phrase in article 12.1(a) of the Subcontract stating "to the extent caused" expresses an intent to limit Muhler's liability to its concurrent negligence and specifically excludes liability for Superior's concurrent negligence.
The circuit court properly found the Subcontract failed to clearly and unequivocally show an intention by the parties to indemnify Superior for its own concurrent negligence. Generally, we will construe an indemnification contract "in accordance with the rules for the construction of contracts." Campbell , 313 S.C. at 453, 438 S.E.2d at 272. However, as explained above, when an indemnity clause purports "to relieve an indemnitee from the consequences of its own negligence," our case law requires strict construction of the clause.
**651 Laurens , 355 S.C. at 111, 584 S.E.2d at 378-79. "Indeed, most courts agree with the basic rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." Fed. Pac. Elec. , 298 S.C. at 26, 378 S.E.2d at 57.
In Federal Pacific , the indemnification clause was broad and comprehensive. Id. at 25, 378 S.E.2d at 57.
*173 [The appellant] shall indemnify [the respondent] and hold it harmless from and against any damage suffered or liability incurred on account of bodily injury to any person or persons ... or any loss or damage of any kind in connection with the [l]eased [p]remises during the term of this lease.
Id . (brackets removed). This Court explained other jurisdictions differed as to whether, to meet the clear and unequivocal standard, a specific reference in the contract to the indemnitee's negligence is required or "words of general import are sufficient." Id . at 26-27, 378 S.E.2d at 57. It examined a previous case from our supreme court and found "general terms," although broad and comprehensive, were inadequate to satisfy the clear and unequivocal standard. Id . at 29, 378 S.E.2d at 58-59. Specifically, this Court found the use of general terms such as " 'indemnify ... against any damage suffered or liability incurred ... or any loss or damage of any kind in connection with the [l]eased [p]remises during the term of the lease' [did] not disclose an intention to indemnify for consequences arising from [the indemnitee]'s own negligence." Id . (brackets removed).
The indemnification clause at issue in Laurens was also broad and comprehensive: "The [h]ospital will indemnify and hold EMS ... harmless from and against any and all claims, actions, liability, or expenses ... caused by or resulting from allegations of wrongful acts or omissions of [h]ospital employees, servants, [and] agents." 355 S.C. at 110, 584 S.E.2d at 378 (brackets removed). Under the clear and unequivocal standard, our supreme court found this "standard language" did not "disclose an intention by the parties to relieve EMS of the consequences of its own negligence." Id . at 112, 584 S.E.2d at 379.
**652 In Mautz , a New Jersey court examined almost identical language as that used in the Subcontract, including the phrase "to the extent caused in whole or in part by any negligent act or omission of the [indemnitor]." Mautz v. J.P. Patti Co. , 298 N.J.Super. 13, 688 A.2d 1088, 1090-91 (1997). The Mautz court found the phrase beginning with "to the extent" was a clear term limiting the indemnitor's promise to indemnify to only the losses resulting from the indemnitor's negligence. Id . at 1092-93. The court concluded, "The clause states [the indemnitor]'s obligation to indemnify [the indemnitee] but only to the extent that the claim is caused by [the indemnitor]'s own negligence. The clause does not provide indemnity to [the indemnitee] for [the indemnitee]'s own negligence, but only to the extent of [the indemnitor]'s negligence." Id . ; see also Braegelmann v. Horizon Dev. Co. , 371 N.W.2d 644, 646 (Minn. Ct. App. 1985) (finding, in a nearly identical indemnity clause, "[t]he additional phrase, 'to the extent caused,' ... suggests a 'comparative negligence' construction under which each party is accountable 'to the extent' their negligence contributes to the injury").[4]
In this case, the language in article 12.1 of the Subcontract is broad but fails to require Muhler to indemnify Superior for Superior's own concurrent negligence. First, we agree with Superior the language in article 12.1, "arising out of or resulting from," is a broad and comprehensive term. Under the language of article 12.1 alone, Muhler broadly agreed to indemnify for any damages resulting from the scope of work in the Subcontract, which was installation of windows and doors. However, we cannot ignore the language in article 12.1(a), which limits the broad language from article 12.1. Specifically, we agree with the Mautz and Braegelmann courts that the phrase, "to the extent caused ... in whole or in any part by any negligent act or omission of [Muhler]," limits Muhler's obligation to indemnify to damages and losses but only to the extent they were caused by the negligence of **653 Muhler and its subcontractors. Muhler's indemnity obligation extends to losses Muhler only causes in part, but does not clearly and unequivocally require Muhler *174 to indemnify for the negligence of others that contributed to the same loss.
Indeed, Superior admitted the limiting function of this phrase multiple times in its brief: "The function of the phrase 'to the extent that ...' is to limit Muhler's indemnity obligation to only that damage caused by, or allegedly caused by, Muhler and its subcontractor's negligent performance of its scope of work." Subsequently, Superior explained, "The second key phrase, 'to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of [Muhler and its subcontractors]' narrows the scope of Muhler's indemnification obligation to property damage caused by Muhler's sole or concurrent negligence." Despite these statements, Superior then claims this limiting phrase beginning with "to the extent" is applicable "only when indemnity is sought for damages associated with multiple trades" such as damages from windows and roofing. We disagree this limiting phrase is applicable only to prevent Muhler from being obligated to indemnify Superior for damages associated with other trades. The Subcontract's terms do not limit the phrase's applicability to such situations and, instead, plainly state Muhler's obligation to indemnify is limited to claims and damages "to the extent caused ... in whole or in any part by any negligent act or omission of [Muhler]."
Furthermore, construing this limiting phrase as Superior suggests would result in the limiting phrase being redundant. As noted above, article 12.1 limits Muhler's obligation to indemnify to damages "arising out of or resulting from the performance of [Muhler]'s work." Thus, although article 12.1 is broad and comprehensive, it limits Muhler's obligation to indemnify to damages arising from installation of windows and doors and, by itself, would prevent Superior from receiving indemnification from Muhler for damages arising from other trades such as roofing, siding, or landscaping. As a result, contrary to Superior's argument, the limiting phrase in article 12.1(a) beginning with "to the extent" must have a meaning other than limiting Muhler's exposure to damages associated with windows and doors. Otherwise, the limiting phrase in article 12.1(a) would be redundant to the limitation already **654 contained in article 12.1. We find the meaning of the limiting phrase in article 12.1(a) is to limit Muhler's obligation to indemnify to damages and losses caused by the negligence of Muhler and its subcontractors.
Also, the final phrase of article 12.1(a), which states "regardless of whether it is caused in part by a party indemnified hereunder," fails to alter the "to the extent" limiting phrase and provide the clear and unequivocal language Superior needs. See Braegelmann , 371 N.W.2d at 646 (finding the phrase, "regardless of whether it is caused in part by a party indemnified hereunder" failed "under the strict construction standard"). We read this phrase to mean whatever level of indemnification article 12.1 provides is not negated simply because Superior's negligence contributed to the loss. Thus, if the Subcontract said, "Muhler agrees to indemnify for all damages, regardless of whether the damages are caused in part by a party indemnified hereunder," Superior may have had a valid claim that such language showed an intent to indemnify Superior for its own concurrent negligence. However, as noted above, the phrase beginning with "to the extent" in article 12.1(a) limits Muhler's obligation to indemnify to damages and losses caused by Muhler's negligence. Thus, reading article 12.1 as a whole, the final phrase of article 12.1(a) shows only the parties' intent that Muhler's obligation to indemnify for Muhler's negligence is not diminished or affected in the event Superior is concurrently negligent. Contrary to Superior's claims, this final phrase does not show an intention by the parties to indemnify Superior for its concurrent negligence.
Superior cites many cases from other jurisdictions that interpret indemnification clauses with what it labels as "substantially identical language."[5] Superior claims all of *175 these **655 cases reach the same conclusion and support Superior's bid for indemnification for its own concurrent negligence. Although the indemnification clauses in these cases are indeed similar to the clause in the Subcontract, they lack the key phrase, "to the extent caused ... by any negligent act or omission of the [indemnitor]." The indemnification clauses in all of the cases cited by Superior and noted in footnote four lack this key phrase and, instead, broadly require the indemnitor to indemnify for all damages "arising out of or resulting from the performance of the work." See Camp , 853 So.2d at 1076. As noted above, "arising out of or resulting from" is broad and comprehensive. However, unlike the indemnification clause in the Subcontract, the clauses at issue in these other cases lack the subsequent term limiting the indemnitor's obligation to indemnify to the damages caused by the indemnitor's negligence. As a result, we are unpersuaded by the extensive list of well-reasoned, but factually and meaningfully distinguishable, cases cited by Superior.
Thus, strictly construing the Subcontract, the circuit court properly found it fails to indemnify Superior for losses resulting from its own concurrent negligence. See Laurens , 355 S.C. at 111, 584 S.E.2d at 378-79 (requiring "strict construction of a contract" when a party seeks indemnification for its own concurrent negligence). We affirm the circuit court's ruling on this issue.
CONSTRUING THE SUBCONTRACT AND 2007 AGREEMENT IN CONJUNCTION
Superior argues the circuit court erred by failing to "reconcile the Subcontract with the 2007 Agreement and construe them in conjunction." Superior argues the 2007 Agreement "alters" the Subcontract and "expands the scope of recovery" under article 12.1. Specifically, Superior claims the phrase, "all damages," in the 2007 Agreement conflicts with and replaces the phrase, "to the extent caused," in the Subcontract. Superior appears to argue the circuit court should have **656 merged the indemnification clauses together to create one indemnification clause. However, Muhler argues the circuit court properly construed the Subcontract and 2007 Agreement separately based on a term in the 2007 Agreement stating it "ha[d not] amended or affected any party's contractual rights and responsibilities except to the extent specifically stated." Regardless, Muhler claims the 2007 Agreement did not broaden the scope of the indemnity clause within the Subcontract.
The circuit court properly found the 2007 Agreement did not rescue the Subcontract's failure to clearly and unequivocally provide for indemnification for Superior's own concurrent negligence. First, to the extent Superior advocates merging article 12.1 from the Subcontract and paragraph eleven from the 2007 Agreement to create one indemnity clause, we disagree. Muhler agreed to the two indemnity clauses with different language as part of separate contracts with Superior. Merging the indemnity clauses into one clause by replacing some language but leaving other language in place would amount to rewriting the indemnity clauses into a contractual term to which Muhler did not agree. In the absence of clear and express language in the 2007 Agreement instructing what phrases replace specific terms in the Subcontract, we decline Superior's invitation to rewrite the indemnity clauses. The circuit court properly interpreted each indemnity clause according to its own terms. See Lowcountry Open Land Trust v. Charleston S. Univ. , 376 S.C. 399, 410, 656 S.E.2d 775, 781 (Ct. App. 2008) ("Courts only have the authority to specifically enforce contracts that the parties themselves have made; they do not have the authority to alter contracts or to make new contracts for the parties.");
*176 Lewis v. Premium Inv. Corp. , 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002) ("It is not the function of the court to rewrite contracts for parties.").
Next, the indemnity clause in the 2007 Agreement fails to show an intent, in clear and unequivocal terms, to indemnify Superior for its own concurrent negligence. Arguably, the 2007 Agreement is broader than the Subcontract by claiming Muhler will "unconditionally indemnify" and "pay all damages" while omitting the phrase from the Subcontract beginning with "to the extent caused." However, the 2007 Agreement also fails to include any reference to indemnification for Superior's own concurrent negligence. The broad, **657 comprehensive, and general terms in the 2007 Agreement are inadequate to show the parties intended Muhler to indemnify Superior for Superior's own concurrent negligence. Although there is no verbatim phrase that must be used to meet the clear and unequivocal standard, there must be some language in an indemnity clause that clearly shows the parties' intent to absolve the indemnitee of the consequences of its own concurrent negligence. See Snohomish Cty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc. , 173 Wash.2d 829, 271 P.3d 850, 854 (2012) (en banc) (applying a "clear and unequivocal" standard and finding, although "formulaic language" is not required, the contract must contain "language unquestionably showing the parties' intent to indemnify in the event of losses resulting from the indemnitee's negligence").
The language in the 2007 Agreement is similar to the indemnity clauses in Laurens and Federal Pacific , both of which failed to meet the clear and unequivocal standard. See Laurens , 355 S.C. at 110-12, 584 S.E.2d at 378-79 (finding the language "[t]he [h]ospital will indemnify and hold EMS ... harmless from and against any and all claims, actions, liability, or expenses ... caused by or resulting from allegations of wrongful acts or omissions of [h]ospital employees, servants, [and] agents" did not "disclose an intention by the parties to relieve EMS of the consequences of its own negligence"); Fed. Pac. , 298 S.C. at 28-29, 378 S.E.2d at 58-59 (finding the use of broad and general terms, including "indemnify ... against any damage suffered or liability incurred ... or any loss or damage of any kind in connection with the [l]eased [p]remises," failed to "disclose an intention to indemnify for consequences arising from [the indemnitee]'s own negligence"). Thus, the language in the 2007 Agreement failed to clearly and unequivocally show the parties intended Muhler to indemnify Superior for Superior's own concurrent negligence. We find the circuit court properly considered the 2007 Agreement separate from the Subcontract and correctly found the 2007 Agreement did not clearly and unequivocally require Muhler to indemnify Superior for Superior's own concurrent negligence.
CONCLUSION
Based on the foregoing, we affirm the circuit court's order because the court did not err by applying the clear and **658 unequivocal standard. Also, neither the language in the Subcontract nor the language in the 2007 Agreement revealed an intent, in clear and unequivocal terms, by the parties for Muhler to indemnify Superior for Superior's own concurrent negligence.[6]
AFFIRMED.
SHORT and HILL, JJ., concur.

Regime filed its first complaint in March 2010, but the allegations we restate in this opinion are from Regime's Second Amended Complaint, which it filed in June 2012.

It is undisputed that because Superior did not extinguish Muhler's liability in its settlement, it has no right of contribution against Muhler. It is also undisputed Superior has no claim for equitable indemnity, as it acknowledges it was partially negligent.

The clear and unequivocal standard is also known as the negligence rule. Ashley II , 409 S.C. at 490-91, 763 S.E.2d at 21.

Superior claims Braegelmann is inapplicable because it involves "a factually distinguishable situation-an on-the-job personal injury claim." Superior argues an employer has a different duty than a general contractor on a construction site and a general contractor's negligence is not independent of the subcontractor's negligence. We fail to see how this distinction impacts or changes the analysis of contractual terms regarding indemnification.

See United States v. Seckinger , 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970) ; McBro, Inc. v. M & M Glass Co. , 611 So.2d 283 (Ala. 1992) ; Washington Elementary Sch. Dist. No. 6 v. Baglino Corp. , 169 Ariz. 58, 817 P.2d 3 (1991) (en banc); Cumberbatch v. Bd. of Trustees, Del. Tech. & Cmty. Coll. , 382 A.2d 1383 (Del. Super. Ct. 1978) ; Camp, Dresser & McKee, Inc. v. Paul N. Howard Co. , 853 So.2d 1072 (Fla. Dist. Ct. App. 2003) ; Simon Prop. Grp., L.P. v. Brandt Constr., Inc. , 830 N.E.2d 981 (Ind. Ct. App. 2005) ; Thornton v. Guthrie Cty. Rural Elec. Co-op. Ass'n , 467 N.W.2d 574 (Iowa 1991) ; Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc. , 382 N.W.2d 156 (Iowa 1986) ; Berry v. Orleans Par. Sch. Bd. , 830 So.2d 283 (La. 2002) ; Wallace v. Slidell Mem'l Hosp. , 509 So.2d 69 (La. Ct. App. 1987) ; Robinson v. A. Z. Shmina & Sons Co. , 96 Mich.App. 644, 293 N.W.2d 661 (1980) ; Oster v. Medtronic, Inc. , 428 N.W.2d 116 (Minn. Ct. App. 1988) ; Gunka v. Consol. Papers, Inc. , 179 Wis.2d 525, 508 N.W.2d 426 (Wis. Ct. App. 1993).

We recognize the challenges lawyers often face in drafting indemnity provisions that can meet the strict "clear and unequivocal" test. In fact, none of our precedents appear to have found a provision that has met the standard. The provision here derived from an American Institute of Architects (AIA) form. The AIA is a respected organization, and its forms are used regularly in the construction industry. Nevertheless, the indemnity clause at issue here may have been influenced by the "clear and unequivocal" standard. As the Texas Supreme Court has observed, this strict construction test has caused drafters of indemnity provisions to write them in a way that can be read as indemnifying the indemnitee for its own negligence, "yet be just ambiguous enough to conceal that intent from the indemnitor." Ethyl Corp. v. Daniel Constr. Co. , 725 S.W.2d 705, 707-08 (Tex. S. Ct. 1987). What results are law suits that burden courts with deciding whether the parties' intent was camouflaged or "clear and unequivocal." Because South Carolina appellate courts have never upheld an indemnity clause as "clear and unequivocal," parties and their lawyers have little guidance. This is why the Texas Supreme Court discarded the "clear and unequivocal" standard in favor of one they call "express negligence," although we are uncertain how much that clears things up. See id. at 708. There may be better alternatives to the "clear and unequivocal" standard, but we must leave that to our legislature or supreme court.