**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

NGM Insurance Company, Appellant,

v.

Miles Insurance Agency, Inc., Respondent.

Appellate Case No. 2019-001685

———————

Appeal From Lancaster County
Kristi F. Curtis, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-155
Heard October 4, 2022 – Filed April 19, 2023

———————

**AFFIRMED IN PART, REMANDED IN PART**

———————

Thomas Frank Dougall, of Dougall & Collins, of Elgin,
and Michal Kalwajtys, of Baker Ravenel & Bender, LLP,
of Columbia, both for Appellant.

Bernie W. Ellis, of Burr & Forman LLP, of Greenville,
for Respondent.

———————

**PER CURIAM:** In this appeal arising from the reformation of an insurance policy, NGM Insurance (Carrier) challenges the circuit court's grant of summary judgment to Miles Insurance (Agency). Carrier argues the circuit court erred in finding Carrier could not recover in contractual indemnity because it suffered no

damages as a result of Agency's failure to make a meaningful offer of underinsured motorist (UIM) coverage to the insured.  We affirm the circuit court's grant of summary judgment as to Carrier's asserted contractual damages of $300,000.  However, we remand for a determination of whether Agency is liable to Carrier for UIM premiums Carrier would have received from Janet Webster and for the attorneys' fees Carrier incurred in defending against the reformation action.

In 1994, Carrier and Agency entered an agency agreement (the Agreement) that authorized Agency to sell insurance coverage on Carrier's behalf.  The Agreement contained an indemnification section, which stated:

> a.  The Company will hold the Agent harmless against liability resulting from loss to policyholders based on error or omission of the Company in processing or handling of policies if the Agent has not contributed to or compounded such error or omission.  Conversely, the Agent will hold the Company harmless against liability it may incur to or on behalf of its policyholder, actual or alleged, based on error or omission of the Agent if the Company has not contributed to or compounded such error or omission.

> . . . .

> c.  The Agent shall hold the Company harmless and shall reimburse the Company for any loss, expense or damage sustained by reason of any violation of the provisions of this Agreement or of the written or printed instructions furnished the Agent by the Company.

On January 5, 2001, Janet met with Agency to discuss coverage options.  Janet and Jerry Webster obtained a policy with $50,000/$100,000/$50,000 limits.  Janet accepted the offer to purchase additional uninsured motorist (UM) coverage of 50/100/50, but "Reject" was written next to UIM on her application form.  A "South Carolina Auto Supplement" containing the "Offer of Optional Additional Uninsured Motorist Coverage and Optional Underinsured Motorist Coverage" was attached to this application; it also noted "Reject" in the space for UIM.  The application Janet signed did not contain the premium amounts for UIM coverage options.  Richard Miles, Agency's owner, explained Agency's practice was to provide and review with applicants a separate quote sheet noting the additional premiums for various levels of UIM coverage.

In 2012, Jerry Webster was involved in a serious car accident for which he was not at fault. He suffered severe injuries and incurred $244,859.00 in medical expenses. The at-fault vehicle carried minimum liability limits. In 2015, the Websters filed suit against Agency and Carrier, seeking to reform their insurance policy based on Janet's assertion that no meaningful offer of UIM coverage had been made at the time of her application. At a nonjury trial in 2017, Janet testified that if she had received a meaningful offer of UIM coverage disclosing additional premium costs, she would have accepted the offer of UIM coverage even if such acceptance greatly increased the policy premium.

In the reformation action, the circuit court found Agency and Carrier were not entitled to the presumption of a meaningful offer because the additional UIM premium was not listed on the Websters' application form in violation of Section 38-77-350(A) of the South Carolina Code (2015).[1] The court further found defendants "failed to give a meaningful offer of Underinsurance motorist coverage to the Plaintiffs" and reformed the policy to include UIM coverage on all vehicles covered by the Websters' policy.[2] Carrier then settled with the Websters for $300,000.

Carrier demanded indemnification from Agency for the $300,000 it paid to settle with the Websters and for $21,894.46 in attorneys' fees incurred in defending the action to reform the policy. Carrier subsequently sued Agency for breach of contract and sought contractual indemnity, alleging Agency's failure to make a

---

[1] Section 38-77-350(A) provides, in pertinent part, that the approved form automobile insurers shall use for "all new applicants" when "offering optional coverages required to be offered" must, at a minimum, provide:

> (1) a brief and concise explanation of the coverage;
> (2) a list of available limits and the range of premiums for the limits;
> (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires. . . .

[2] Neither party appealed the circuit court's finding in the reformation action that Agency and Carrier failed to make a meaningful offer of UIM coverage.

meaningful offer of UIM coverage to the Websters resulted in its loss of $300,000, plus attorneys' fees and costs incurred in the reformation action.

Agency moved for summary judgment, arguing Carrier could not prove it suffered damages as a result of an alleged failure to make a meaningful offer of UIM coverage to Janet. Carrier likewise moved for summary judgment, arguing it was entitled to damages caused by Agency's errors and omissions in offering coverage.

The circuit court denied both motions for summary judgment, finding there was a genuine issue of material fact as to whether Janet would have purchased UIM coverage if a meaningful offer had been made. The circuit court referenced Janet's testimony that Agency did not explain the coverages she sought and noted the lack of specific testimony from Janet that she would have purchased UIM coverage had it been explained to her.

Both Agency and Carrier filed Rule 59(e), SCRCP motions. Agency argued the circuit court overlooked Janet's testimony that she would have purchased UIM coverage had a meaningful offer been made. Carrier argued Janet's intent was immaterial. The circuit court granted Agency's Rule 59(e) motion and entered summary judgment for Agency, referencing the portion of the trial transcript in which Janet testified she would have purchased UIM coverage if a meaningful offer had been made. The circuit court found Carrier would have been required to issue the Policy with UIM coverage; thus, there was no "genuine issue of material fact that Miles' performance of its duties, or lack thereof, resulted in liability to NGM that it would not otherwise have had."

"When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Turner v. Milliman*, 392 S.C. 116, 121–22, 708 S.E.2d 766, 769 (2011). Under Rule 56(c), SCRCP, summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"Typically, courts will construe an indemnification contract 'in accordance with the rules for the construction of contracts generally.'" *Concord & Cumberland Horizontal Prop. Regime v. Concord & Cumberland, LLC*, 424 S.C. 639, 647, 819 S.E.2d 166, 170 (Ct. App. 2018) (quoting *Campbell v. Beacon Mfg. Co., Inc.*, 313 S.C. 451, 453, 438 S.E.2d 271, 272 (Ct. App. 1993)).

We agree with the circuit court that Carrier is not entitled to indemnification for the $300,000 it paid to settle with the Websters.  The circuit court had already found in the reformation action that Janet would have accepted a meaningful offer of UIM coverage.  Thus, had Carrier written the UIM policy and tendered the $300,000 policy limits to settle the underlying claim, Carrier would be in the same position on the coverage payout—other than with respect to any UIM premiums lost and attorneys' fees incurred—whether or not Agency made a proper meaningful offer of UIM coverage.[3]

Although the evidence establishes Carrier did not sustain damages of $300,000 as a result of the ordered reformation of the policy, a genuine issue of material fact remains as to whether Carrier is entitled to recover the premiums it would have collected had Janet purchased properly offered UIM coverage in 2001.[4] Additionally, under the language of the contractual indemnification provision, a genuine issue of material fact exists as to whether Carrier is entitled to recover the attorneys' fees it incurred in defending the reformation action.

Based on the foregoing, we affirm the circuit court's grant of summary judgment to Agency with respect to Carrier's claimed damages of $300,000.  We remand for a hearing to determine whether Carrier is entitled to recover its premiums lost and attorneys' fees incurred in defending the reformation action.

**AFFIRMED IN PART, REMANDED IN PART.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**

---

[3] Notably, Carrier's 30(b)(6) designee testified in his deposition that Carrier received and accepted Janet's application.  He explained that under the company's guidelines at the time, "on a voluntary coverage, such as underinsured, it would not have been a kick out provision that we would have reviewed in accepting this policy."  Moreover, section 38-77-160 of the South Carolina Code (2015) requires automobile insurance carriers to "offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage. . . ."

[4] At the summary judgment hearing, Agency admitted Carrier sustained damages to the extent of the unpaid premiums but contended Carrier could recover such losses from the Websters.