## THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Retreat at Charleston National Country Club Home Owners Association, Inc., and The Retreat at Charleston National Country Club Horizontal Property Regime, Plaintiffs,

v.

Winston Carlyle Charleston National, LLC; Colin R. Campbell Construction, Inc.; Colin Campbell, individually; Builders FirstSource-Southeast Group, LLC; Builders FirstSource, Inc.; Americo Roofing Concepts, Inc.; DVS, Inc.; Advanced Building Connection, LLC; Guy C. Lee Building Materials, LLC; WS Contractors, LLC; Dino Schwartz, Individually; Charleston Exteriors, LLC; ECC Contracting, LLC; Hurley Services, LLC; McDaniel Construction Co., LLC; AC Construction Corp.; AC Construction, Inc.; L&G Construction Group, LLC; Liollio Architecture; JC Contractors, LLC; Soto & Vasquez Construction, LLC; Costa De Oliveira Construction, LLC; Solesmar Jesus De Oliveria; Wilson Lucas Sales d/b/a Miracle Siding; Miracle Siding, LLC; Royal Homes of SC, Inc.; Collen Batissa; Christopher Batissa; Norma Ferreira Bruno; Mendez Construction, LLC; Juan Garza Ramos, individually; Juan Garza Ramos d/b/a Juan Constructors; Jessica Marroquin, individually; Jessica Marroquin d/b/a Marroquin Construction; Carlos Marroquin, individually; Carlos Marroquin Construction; Carlos and Jessica Marroquin d/b/a Marroquin Construction; Feliciano Cruz Silva; Garcia Roofing, LLC; Givair De Caris; and Mario Salgado; Defendants,

Builders FirstSource-Southeast Group, LLC, Third-Party Plaintiff, Appellant,

v.

Pohlman Quality Contractors; Pohlman Quality Exteriors; Palmetto Trim and Renovation; Edward Bruce Witham; and East Coast Carpentry, Third-Party Defendants,

Of which Palmetto Trim and Renovation; Hurley Services, LLC; ECC Contracting, LLC; East Coast Carpentry; AC Construction, Inc.; WS Contractors, LLC; Pohlman Quality Exteriors, Inc.; and L&G Construction Group, LLC are the Respondents.

Appellate Case No. 2021-001050

———

Appeal From Charleston County
Jennifer B. McCoy, Circuit Court Judge

———

Opinion No. 6099
Heard March 5, 2024 – Filed February 12, 2025
Withdrawn, Substituted, and Refiled May 21, 2025

———

**AFFIRMED**

———

Stephen P. Hughes and William Hewitt Cox, III, both of Howell Gibson & Hughes, PA, of Beaufort, for Appellant.

Thomas Frank Dougall, of Dougall & Collins, of Elgin, and Michal Kalwajtys, of Baker Ravenel & Bender, LLP, of Columbia, both for Respondent L&G Construction Group, LLC.

Edward Glenn Elliott, of Aiken Bridges Elliott Tyler & Saleeby, P.A., of Florence, for Respondent Pohlman Quality Exteriors, Inc.

W. McElhaney White and Todd Russell Flippin, of
Holcombe Bomar, PA, of Spartanburg, for Respondent
Hurley Services, LLC.

Kevin W. Mims, John Barnwell Fishburne, Jr., and
William Chase McNair, all of Luzuriaga Mims, LLP, of
Charleston, for Respondent AC Construction Inc.

Payton Dwight Hoover and James H. Elliott, Jr., both of
Richardson Plowden & Robinson, PA, of Mount
Pleasant, for Respondent Palmetto Trim and Renovation.

Francis Heyward Grimball and James H. Elliott, Jr., both
of Richardson Plowden & Robinson, PA; Mark Shanter
Chaparro, of Hall Booth Smith, PC; and L. Dean Best, of
Best Law, P.A., all of Mt. Pleasant, for Respondent ECC
Contracting, LLC.

Francis Heyward Grimball and James H. Elliott, Jr., both
of Richardson Plowden & Robinson, PA, of Mt. Pleasant,
for Respondent East Coast Carpentry.

John Phillips Linton, Jr. and Jennifer Sue Ivey, both of
Walker Gressette & Linton, LLC, of Charleston, for
Respondent WS Contractors, LLC.

---

**MCDONALD, J.:** Builders FirstSource-Southeast Group, LLC (BFS) appeals eight orders granting summary judgment or partial summary judgment to various subcontractors. BFS argues the circuit court erred in (1) applying the clear and unequivocal standard of *Concord & Cumberland Horizontal Property Regime v. Concord & Cumberland, LLC*, 424 S.C. 639, 819 S.E.2d 166 (Ct. App. 2018); (2) finding the indemnity provisions of BFS's subcontracts violate South Carolina law and public policy; (3) finding BFS's indemnity claims are collaterally estopped; (4) failing to address severability or finding the court lacked authority to sever; and (5) deeming the subcontracts unconscionable and unenforceable. We affirm all eight orders.

**Facts and Procedural History**

This appeal stems from complex construction defect litigation filed by The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime (collectively, Plaintiffs).  In this underlying case, Plaintiffs sought damages for deficiencies in the original construction of a multi-family development consisting of thirty-two buildings containing 129 townhome units (the Project).  According to Plaintiffs' fourth amended complaint, BFS "provided materials and/or labor, including but not limited to the framing, the windows and doors and all related components at all or a portion of the Project."[1]

Plaintiffs claimed, among other things, that BFS's framing and window installation services were deficient and that these deficiencies resulted in water intrusion and corresponding damages.  Plaintiffs' forensic expert opined the windows had inadequate design pressure (DP) ratings;[2] were installed using fasteners of an improper type and inadequate length to assure the embedment of the fasteners into the framing; and were  installed using  fasteners at spacing intervals exceeding those required by the manufacturer's installation criteria.

BFS contracted with several subcontractors for work on the Project.  After litigation began, BFS filed crossclaims or third-party claims against many of its subcontractors, asserting causes of action for negligence, breach of express and implied warranty, breach of contract, and contractual or equitable indemnity.

Respondents filed motions for summary judgment and supporting memoranda throughout 2019 and 2020.  In May 2021, the circuit court issued Form 4 orders granting, or granting in part, summary judgment to Palmetto Trim and Renovation (Palmetto), Hurley Services, LLC (Hurley), ECC Contracting, LLC (ECC), East Coast Carpentry (East Coast), AC Construction, Inc. (ACC), WS Contractors, LLC

---

[1] BFS holds an unlimited commercial general contractor's license.  The circuit court found it "is undisputed that BFS furnished the framing lumber, housewrap, windows, doors, related flashings, and caulk" as well as "superintendents to oversee and inspect the installation of such materials for construction of the Project on Buildings 5-21, 2200, 2300, 2500, 2600, 2700, 2800, and 2900."

[2] DP ratings address the pressure a window can withstand without failing.

(WSC), and Pohlman Quality Exteriors, Inc. (Pohlman).[3]  Formal orders followed, and the circuit court denied BFS's motions to reconsider.[4]  BFS timely filed eight separate notices of appeal.  Over BFS's objection, this court consolidated these eight appeals.

**Standard of Review**

"Rule 56(c) of the South Carolina Rules of Civil Procedure provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 297 (2023) (alterations by the court) (quoting Rule 56(c), SCRCP).

**Analysis**

Among the orders before us, two different versions of BFS's master subcontract are at issue.  Two orders address the 2005 version of BFS's master subcontract (the

---

[3] "Palmetto served as a subcontractor of BFS and in that capacity performed window installation work on Units 500, 700 and 1000."  "Hurley was a labor-only subcontractor to BFS . . . .  BFS sold and provided for installation windows, doors, weather-resistant materials, and other building components for some of the buildings."  "ECC served as a subcontractor of BFS and in that capacity performed deck repair work on Unit 2001, and installed windows and doors on Units A1 & A2."  No deficiencies have been documented by Plaintiffs at Unit 2001.  "East Coast served as a subcontractor of BFS and in that capacity performed window installation on Buildings 6, 8, 9, 12, 13, 14, 16, 17, 18."  ACC "served as a subcontractor of BFS and in that capacity performed framing services on Buildings 5 through 22.  [ACC] did not perform any other work on the Project."  "WSC served as a subcontractor of BFS and performed work on Buildings 22 through 31 at the Project that were constructed between 2012 and late 2014.  WSC did not perform any work on other buildings at the Project."  Pohlman was a labor-only contractor on Buildings 11 and 21; BFS supplied building materials for Pohlman's use.

[4] The circuit court also granted L&G Construction's motion to join in ECC and WSC's motions for partial summary judgment.  In this order, the circuit court explains, "BFS supplied all materials and hired several subcontractors to perform its scope of work.  L&G, a residential framer, was one of those subcontractors."

2005 Contracts); the other six involve a later version of this master agreement (the Later Contracts).

The 2005 Contracts govern BFS's relationships with Palmetto and East Coast (collectively, the 2005 Subcontractors). These contracts contain the following relevant clauses, including the indemnification language of Section 6(b)(2):

**SECTION 1.  Introduction.**

**Work.**  This Agreement contains the basic terms and conditions under which Subcontractor agrees to provide materials and/or to perform services (the "**Work**") from time to time for Contractor on any project (the "**Project**").  TIME IS OF THE ESSENCE. . . .  In accordance with the terms and conditions contained in this Agreement, Subcontractor will perform and finish in a good and workmanlike manner, and will furnish all required materials, labor, equipment, supplies and tools for, the Work described from time to time for Contractor on any Project.  The Work will be performed in accordance with plans, specifications, drawings and schedules for the Work, and any supplemental terms and conditions to this Agreement, all of which are, or will be, on file at the office of the Contractor ("**Contract Documents**") and incorporated into the Agreement by this reference as if fully set forth.  Contractor will have the right at any time to supplement the plans and specifications for the Work with additional or replacement drawings and schedules or other documents and upon so doing such drawings and schedules will immediately become part of the Contract Documents.  The Contract Documents, including any time schedules, may be amended and/or supplemented from time to time by giving Subcontractor written notice thereof.  Subcontractor's only remedy in the event an amendment or supplement to the Contractor Documents materially increases the cost or difficulty of performance by the Subcontractor is to terminate this Agreement by written notice to Contractor within 24 hours after Contractor delivers such amendment or supplement to Subcontractor.

. . . .

**SECTION 2.  Materials and Workmanship.**  Subcontractor agrees to commence Work on Projects upon request by Contractor.

Subcontractor agrees to provide all labor, services, equipment, and tools necessary to complete the Work.

. . . .

**c. Protection of Work.**  Subcontractor shall bear all risk of loss or damage to the Work resulting from any cause whatsoever until Subcontractor has completed its Work on the Project and such work has been accepted by Contractor and Owner.  Subcontractor shall at all times, and at its expense, protect all of its labor, materials (regardless of who supplied such materials), supplies, tools, and equipment (and those of its employees, agents, and subcontractors) against any damage, injury, destruction, theft, or loss.  Subcontractor shall, at its expense, promptly repair or replace damage to the Work or damage to any other components of the Project resulting from the activities of Subcontractor or its employees, agents, or subcontractors.

. . . .

**SECTION 3.  Warranty and Service.**  All Work shall be unconditionally guaranteed by Subcontractor for a period of two years, or such longer period as may be required by law or for which Owner requires Contractor to warrant such Work, from the date following Owner's acceptance of the Work.  Subcontractor shall correct at its own expense all defects that appear during such period, and all damage (whether to the Work or other components of the Project) arising out of, caused by or in any way related to said defects or repair, within twenty-four (24) hours after written notice or within the time agreed to in writing by Contractor (Saturdays and Sundays excluded).  *The determination as to what constitutes a defect will be within the sole discretion of Contractor and Owner.*  If Subcontractor fails to promptly commence and complete the correction of defects, Contractor or Owner may do so.  In such event, Subcontractor shall promptly reimburse Contractor for the cost of such work, plus a sum of fifteen percent (15%) thereof (for supervision and overhead).  Contractor may, at its option, elect to charge such amounts against the next Partial Payment (defined in **Section 8**) or the final payment.  Subcontractor will maintain a published phone number or an answering service during normal working hours.

. . . .

**SECTION 6.  Waiver, Release, and Indemnification.**
Subcontractor agrees that Subcontractor, and not Contractor, shall be *responsible for all injuries, losses, or damages to Subcontractor, its employees, agents, and subcontractors and to any other parties arising from or relating in any way to the performance of the Work or the actions or inactions of Subcontractor or its agents, employees, and subcontractors.  Subcontractor will indemnify, defend and hold Contractor harmless against any such injuries and claims.* Accordingly:

. . . .

**b. Release and Indemnity.**

(1) Subcontractor hereby agrees to release, indemnify, defend, and hold harmless Contractor and Owner and their affiliates and employees, directors, officers, agents, and invitees (each an "**Indemnitee**"), to the fullest extent permitted by law from any costs, expenses, demands, causes of action, claims, damage, liability, loss, or costs ("**Claims**") (together with attorneys' fees) arising out of, resulting from, or connected with the death of or any injury to, or any damage to the property of, Subcontractor or its employees, agents, or subcontractors or any of their respective subcontractors, employees, officers, agents, or invitees.

(2) For all Claims not covered by (1) above and to the fullest extent permitted by law, *Subcontractor agrees to release, indemnify, defend, and hold harmless the Indemnitees for, and to save them harmless against, any and all Claims (together with reasonable attorneys' fees), to the extent of liability resulting from Subcontractor's negligence or willful misconduct incurred by the Indemnitees which arise out of or relate to (i) any alleged personal injury, death, or property damage arising from or connected with the Work; (ii) any alleged defect or malfunction in any of the services or materials provided in connection with the Work; or (iii) omissions resulting from Indemnitee's failure to supervise Subcontractor's operations.*

. . . .

**SECTION 8. Payment to Subcontractor.**

. . . .

**i. Indemnification.** Subcontractor hereby agrees to indemnify, defend, and save Contractor and Owner harmless from and against any mechanics' and materialmen's liens upon the Project, attorneys' fees and expenses, amounts paid in settlement, and amounts paid to discharge judgments arising out of the services, labor, equipment, or materials furnished by Subcontractor or its employees, suppliers, or subcontractors. If Subcontractor fails to do so, Contractor may deduct from sums then or thereafter due to Subcontractor such amounts as Contractor deems appropriate in its sole discretion to indemnify Contractor and Owner from liens, claims, and encumbrances. Contractor may, in its sole discretion, cure any liens or satisfy any demands, and recover its costs related directly or indirectly thereto from Subcontractor. *Subcontractor hereby waives, releases, and forever discharges Contractor and Owner from all costs, expenses, claims, demands, damages, losses, causes of action, or liabilities that Subcontractor may have against Contractor or Owner that arise directly or indirectly from curing any such liens, claims, encumbrances, or demands.*

**SECTION 9. Miscellaneous.**

. . . .

**f. Other.** This Agreement embodies the entire agreement between the parties and supersedes all prior agreements and understandings. This Agreement may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought. No delay or failure by Contractor to exercise any right or remedy hereunder, and no partial or single exercise of such right or remedy, will constitute a waiver of that or any other right or remedy. The duties and obligations imposed by this Agreement and rights and remedies available hereunder shall be in addition to and not a limitation of duties, obligations, rights, and remedies otherwise imposed or available by law. The prevailing party to any dispute shall

have a right to collect its reasonable attorney's fees and expenses. This Agreement shall be governed by the laws of the State of Texas, without regard to the conflicts of law provisions thereof. *The provisions of this Agreement shall be deemed independent and severable, and the invalidity or partial invalidity of any provision or portion thereof shall not affect the validity or enforceability of any other provision or portion thereof.* It is the intent of the parties that any invalid provision hereof be reformed to the extent necessary to make it enforceable to the maximum extent of the law.

(Italics added for emphasis).

The Later Contracts govern BFS's relationships with Hurley, ECC, ACC, WSC, Pohlman, and L&G (the Later Subcontractors). These contain similar language, including the indemnification language of Section 5, which BFS contends is the relevant indemnification language in the Later Contracts:

**SECTION 1.  Introduction.**

**a. Work.** This Agreement contains the basic terms and conditions under which Subcontractor agrees to provide materials and/or to perform services (the "**Work**") from time to time for Contractor on any project (the "**Project**"). TIME IS OF THE ESSENCE. It will apply to and govern all Work requested by Contractor from Subcontractor at any time following the date of this Agreement, unless other terms and conditions are specifically agreed to in writing by Contractor with respect to particular items of Work or until this Agreement is terminated as hereinafter provided. In accordance with the terms and conditions contained in this Agreement, Subcontractor will perform and finish in a good and workmanlike manner, and will furnish all required materials, labor, equipment, supplies and tools for, the Work described from time to time for Contractor on any Project. Projects may or may not be owned or controlled by Contractor's customer (the "**Owner**"). The Work will be performed in accordance with plans, specifications, drawings and schedules for the Work, and any supplemental terms and conditions to this Agreement, all of which are, or will be, on file at the office of the Contractor (the "**Contract Documents**") and incorporated into the Agreement by reference as if fully set forth. Contractor will have the right at any time to supplement the plans and specifications for the Work with

additional or replacement drawings and schedules or other documents and upon so doing such drawings and schedules will immediately become part of the Contract Documents.  The Contract Documents, including any time schedules, may be amended and/or supplemented from time to time by giving Subcontractor written notice thereof. Subcontractor's only remedy in the event an amendment or supplement to the Contract[] Documents materially increases the cost or difficulty of performance by the Subcontractor is to terminate this Agreement by written notice to Contractor within 24 hours after Contractor delivers such amendment or supplement to Subcontractor.

. . . .

**SECTION 2.  Materials and Workmanship.**
Subcontractor agrees to commence Work on Projects upon request by Contractor.  Subcontractor agrees to provide all labor, services, equipment, and tools necessary to complete the Work.

. . . .

**c. Protection of Work.**  Subcontractor shall bear all risk of loss or damage to the Work resulting from any cause whatsoever until Subcontractor has completed its Work on the Project and such work has been accepted by Contractor and Owner.  Subcontractor shall at all times, and at its expense, *protect all of its labor, materials (regardless of who supplied such materials)*, supplies, tools, and equipment (and those of its employees, agents, and subcontractors) against any damage, injury, destruction, theft, or loss.  Subcontractor shall, at its expense, promptly repair or replace damage to the Work or damage to any other components of the Project resulting from the activities of Subcontractor or its employees, agents, or subcontractors.

. . . .

**SECTION 3. Warranty.**
In addition to any other warranty or guarantee expressly made by Subcontractor or implied by Law, Subcontractor unconditionally warrants and guarantees the Work will conform to any specifications provided by Contractor and comply with all Law and Subcontractor *guarantees the Work against defects in design, workmanship, and*

*materials for the benefit of Contractor and its successors and assigns,* Owner, as well as the ultimate owner of any structure into which the Work is incorporated. This guarantee will commence upon the Subcontractor's completion of the Work and will continue for a minimum of (a) three (3) years for all Work except, (b) *ten (10) years for all Work consisting of any structural applications . . . .* If demand is made upon Subcontractor to perform under this warranty, *Subcontractor at its sole cost and expense will expeditiously repair or replace, at Contractor's sole option, any defective or nonconforming Work and indemnify Contractor and any other party for any costs incurred by any party relating to such demand. This warranty shall extend to all consequential damages resulting from such faults and/or defects of design, material, and workmanship described in this Section, including, without limitation, property damage to the homes or properties into which the Work is incorporated, property damage to the personal property of the ultimate owners of such homes or structures, and personal injury damages to persons residing at or visiting the properties into which the Work is incorporated. . . .* This warranty is independent from all other obligations of Subcontractor under this Agreement, including, without limitation, all indemnification provisions, and will apply whether or not required by any other provision of this Agreement. Owner and any ultimate owner of any structure into which the Work is incorporated shall be intended non-incidental third-party beneficiaries of this Agreement and shall have the power to enforce this Agreement. Subcontractor will maintain a published phone number or answering service during normal working hours.

. . . .

**SECTION 5. INDEMNITY.**
**TO THE FULLEST EXTENT PERMITTED BY LAW, THE SUBCONTRACTOR SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS THE CONTRACTOR, THE OWNER, AND ALL OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND *AGAINST ANY AND ALL CLAIMS,* SUITS, LOSSES, CAUSES OF ACTION, DAMAGES, LIABILITIES, FINES, PENALTIES, AND EXPENSES OF ANY KIND WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ARBITRATION OR COURT COSTS AND ATTORNEY'S FEES**

(SUCH LEGAL EXPENSES TO INCLUDE COSTS INCURRED IN ESTABLISHING THE INDEMNIFICATION AND OTHER RIGHTS AGREED TO IN THIS PARAGRAPH) ARISING OUT OF OR RESULTING FROM BODILY INJURY OR DEATH OF ANY PERSON, OR PROPERTY DAMAGE, INCLUDING LOSS OF USE OF PROPERTY, ARISING OR ALLEGED TO ARISE OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE SUBCONTRACTOR'S PERFORMANCE OF THE WORK OR OTHER ACTIVITIES OF THE SUBCONTRACTOR, *BUT ONLY TO THE EXTENT CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OF THE SUBCONTRACTOR OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY THE SUBCONTRACTOR OR ANYONE FOR WHOSE ACTS THE SUBCONTRACTOR MAY BE LIABLE.* THE CONTRACTOR'S INSURANCE REQUIREMENTS WHICH SUBCONTRACTOR IS SUBJECT TO UNDER THIS AGREEMENT ARE SEPARATE AND DISTINCT FROM THE REQUIREMENT OF INDEMNIFICATION HEREUNDER.

NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY LAW, THE SUBCONTRACTOR SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS, THE CONTRACTOR, THE OWNER, AND ALL OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES (THE "INDEMNITEES"), FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, LOSSES, AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES (SUCH LEGAL EXPENSES TO INCLUDE COSTS INCURRED IN ESTABLISHING THE INDEMNIFICATION AND OTHER RIGHTS AGREED TO IN THIS PARAGRAPH) ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DISEASE, OR DEATH OF, THE SUBCONTRACTOR, ANY AGENT, EMPLOYEE, OR REPRESENTATIVE OF THE SUBCONTRACTOR, OR ANY OF ITS SUBCONTRACTORS, *REGARDLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS, OR EXPENSE IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE OF ANY OF THE INDEMNITEES,* IT BEING THE EXPRESSED INTENT OF THE CONTRACTOR

AND THE SUBCONTRACTOR THAT IN SUCH EVENT THE SUBCONTRACTOR IS TO INDEMNIFY, DEFEND, AND HOLD HARMLESS THE INDEMNITEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE, WHETHER IT IS OR IS ALLEGED TO BE THE SOLE OR CONCURRENT CAUSE OF THE BODILY INJURY, SICKNESS, DISEASE, OR DEATH OF THE SUBCONTRACTOR, SUBCONTRACTOR'S AGENT, EMPLOYEE, OR REPRESENTATIVE, OR THE AGENT, EMPLOYEE, OR REPRESENTATIVE OF ANY OF ITS SUBCONTRACTORS. THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION, OR BENEFITS PAYABLE BY OR FOR SUBCONTRACTOR UNDER WORKERS COMPENSATION ACTS, DISABILITY BENEFIT ACTS, OR OTHER EMPLOYEE BENEFIT ACTS. THE SUBCONTRACTOR SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS SECTION 5.

THE DUTY TO DEFEND UNDER THIS SECTION 5 IS INDEPENDENT AND SEPARATE FROM THE DUTY TO INDEMNIFY, AND *THE DUTY TO DEFEND EXISTS REGARDLESS OF ANY ULTIMATE LIABILITY OR NEGLIGENCE OF THE CONTRACTOR, THE OWNER, OR ANY OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES*. THE DUTY TO DEFEND ARISES IMMEDIATELY UPON PRESENTATION OF A CLAIM BY ANY PARTY INDEMNIFIED HEREUNDER AND WRITTEN NOTICE OF SUCH CLAIM BEING PROVIDED TO SUBCONTRACTOR. SUBCONTRACTOR'S OBLIGATION TO INDEMNIFY, DEFEND, AND HOLD HARMLESS UNDER THIS SECTION 5 WILL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS AGREEMENT UNTIL IT IS FINALLY DETERMINED BY A COURT OF COMPETENT JURISDICTION OR ARBITRATION PANEL THAT A CLAIM AGAINST THE CONTRACTOR, THE OWNER, AND ANY OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FOR THE MATTER INDEMNIFIED

HEREUNDER IS FULLY AND FINALLY BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

THE DEFENSE AND INDEMNIFICATION OBLIGATIONS UNDER THIS AGREEMENT ARE NOT INTENDED TO AND SHALL NOT REQUIRE THE SUBCONTRACTOR OR OTHERS TO INDEMNIFY OR HOLD HARMLESS A REGISTERED ARCHITECT, LICENSED ENGINEER, OR AN AGENT, SERVANT, OR EMPLOYEE OF A REGISTERED ARCHITECT OR LICENSED ENGINEER FROM LIABILITY FOR DAMAGE THAT IS (a) CAUSED BY OR RESULTS FROM: (1) DEFECTS IN PLANS, DESIGNS, OR SPECIFICATIONS PREPARED, APPROVED, OR USED BY THE ARCHITECT OR ENGINEER; OR (2) THE NEGLIGENCE OF THE ARCHITECT OR ENGINEER IN THE RENDITION OR CONDUCT OF PROFESSIONAL DUTIES CALLED FOR OR ARISING OUT OF THE CONSTRUCTION CONTRACT AND THE PLANS, DESIGNS, OR SPECIFICATIONS THAT ARE A PART OF THE CONSTRUCTION CONTRACT; AND (b) ARISES FROM PERSONAL INJURY OR DEATH, PROPERTY INJURY, OR ANY OTHER EXPENSE THAT ARISES FROM PERSONAL INJURY, DEATH OR PROPERTY INJURY.

. . . .

SECTION 8. Payment to Subcontractor.

. . . .

i. INDEMNIFICATION FOR LIENS. TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR HEREBY AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS THE CONTRACTOR, THE OWNER, AND ALL OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND AGAINST ANY MECHANICS' AND MATERIALMEN'S LIENS UPON THE PROJECT, ATTORNEYS' FEES AND EXPENSES, AMOUNTS PAID IN SETTLEMENT, AND AMOUNTS PAID TO DISCHARGE JUDGMENTS ARISING OUT OF THE SERVICES, LABOR,

**EQUIPMENT, OR MATERIALS FURNISHED BY SUBCONTRACTOR, OR ITS EMPLOYEES, SUPPLIERS, OR SUBCONTRACTORS. IF SUBCONTRACTOR FAILS TO DO SO, CONTRACTOR MAY DEDUCT FROM SUMS THEN OR THEREAFTER DUE TO SUBCONTRACTOR SUCH AMOUNTS AS CONTRACTOR DEEMS APPROPRIATE IN ITS SOLE DISCRETION TO INDEMNIFY THE CONTRACTOR, THE OWNER, AND ALL OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM SUCH LIENS, CLAIMS, AND ENCUMBRANCES. CONTRACTOR MAY, IN ITS SOLE DISCRETION, CURE ANY LIENS OR SATISFY ANY DEMANDS, AND RECOVER ITS COSTS RELATED DIRECTLY OR INDIRECTLY THERETO FROM SUBCONTRACTOR.** *SUBCONTRACTOR HEREBY WAIVES, RELEASES, AND FOREVER DISCHARGES THE CONTRACTOR, THE OWNER, AND ALL OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM ALL COSTS, EXPENSES, CLAIMS, DEMANDS, DAMAGES, LOSSES, CAUSES OF ACTION, OR LIABILITIES THAT SUBCONTRACTOR MAY HAVE AGAINST THE CONTRACTOR, THE OWNER, AND ALL OF THEIR OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES THAT ARISE DIRECTLY OR INDIRECTLY FROM CURING ANY SUCH LIENS, CLAIMS, ENCUMBRANCES, OR DEMANDS.*

**SECTION 9. Miscellaneous.**

. . . .

**f. Other.** This Agreement embodies the entire agreement between the parties and supersedes all prior agreements and understandings. This Agreement may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought. No delay or failure by Contractor to exercise any right or remedy hereunder, and no partial or single exercise of such right or remedy, will constitute a waiver of that or any other right or remedy. The duties and obligations imposed by this Agreement and rights and remedies available hereunder shall be in addition to and not a limitation of duties, obligations, rights, and remedies otherwise imposed or available by Law. The prevailing party to any dispute

shall have a right to collect its reasonable attorney's fees and expenses. This Agreement shall be governed by the laws of the State of Texas, without regard to the conflicts of law provisions thereof. *The provisions of this Agreement shall be deemed independent and severable, and the invalidity or partial invalidity of any provision or portion thereof shall not affect the validity or enforceability of any other provision or portion thereof.* It is the intent of the parties that any invalid provision hereof be reformed to the extent necessary to make it enforceable to the maximum extent of the law.

(Italics added for emphasis).

## I. Clear and Unequivocal Standard

BFS argues the circuit court erroneously applied the clear and unequivocal standard articulated in *Concord & Cumberland* to the relevant contractual language because BFS was not seeking indemnity for its own negligence. We disagree, as BFS's position is inconsistent with the language of its own claims as well as the convoluted language within the challenged indemnity provisions.

Courts consistently define indemnity as "'that form of compensation in which a first party is liable to pay a second party for loss or damage the second party incurs to a third party.'" *Concord & Cumberland*, 424 S.C. at 646–47, 819 S.E.2d at 170 (quoting *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 109, 584 S.E.2d 375, 377 (2003)). "Typically, courts will construe an indemnification contract 'in accordance with the rules for the construction of contracts generally.'" *Id.* (quoting *Campbell v. Beacon Mfg. Co.*, 313 S.C. 451, 453, 438 S.E.2d 271, 272 (Ct. App. 1993)).

"[O]ur supreme court has generally held that a contract of indemnity may require a party to indemnify an indemnitee against its own negligence if the 'intention is expressed in clear and unequivocal terms.'" *D.R. Horton, Inc. v. Builders FirstSource-Se. Grp., LLC*, 422 S.C. 144, 152, 810 S.E.2d 41, 45 (Ct. App. 2018) (quoting *Laurens Emergency Med. Specialists, PA*, 355 S.C. at 111, 584 S.E.2d at 379). "[T]he clear and unequivocal standard applies any time an indemnitee is seeking indemnification for its negligence, whether sole or concurrent." *Concord & Cumberland*, 424 S.C. at 649, 819 S.E.2d at 172.

In *Concord & Cumberland*, a condominium regime and several unit owners sued a general contractor (Superior) for construction defects. 424 S.C. at 643, 819 S.E.2d

at 168.  Superior then brought claims against its window and door subcontractor (Muhler), seeking contractual and equitable indemnification.  *Id.*  Superior settled with the plaintiffs "for $775,000 and also claimed approximately $630,000 in attorney's fees and expenses related to its defense of the window and door claims." *Id.* at 644–45, 819 S.E.2d at 169.  When Superior sought to recoup these funds from Muhler, it became necessary for this court to examine the subcontract's indemnity provisions.  Superior urged the court to apply general rules of contract interpretation, rather than the "clear and unequivocal" standard, to its contractual indemnity claim, alleging it sought indemnity for its concurrent negligence, not its sole negligence.  *Id.* at 646, 819 S.E.2d at 170.  Rejecting that argument, this court found the clear and unequivocal standard applied whether the contractor "sought indemnification for its sole or concurrent negligence."  *Id.*[5]

Here, Plaintiffs' fourth amended complaint alleges:

> 88. The deficiencies and defects which exist at the Project are the proximate and direct result of the negligence and/or gross negligence

---

[5] In a footnote, the *Concord & Cumberland* court noted even the American Institute of Architects (AIA) form indemnity clause utilized at that time did not satisfy the clear and unequivocal standard:

> We recognize the challenges lawyers often face in drafting indemnity provisions that can meet the strict "clear and unequivocal" test.  In fact, none of our precedents appear to have found a provision that has met the standard.  The provision here derived from an . . . AIA[] form. The AIA is a respected organization, and its forms are used regularly in the construction industry.  Nevertheless, the indemnity clause at issue here may have been influenced by the "clear and unequivocal" standard.  As the Texas Supreme Court has observed, this strict construction test has caused drafters of indemnity provisions to write them in a way that can be read as indemnifying the indemnitee for its own negligence, "yet be just ambiguous enough to conceal that intent from the indemnitor." *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. S. Ct. 1987).  What results are law suits that burden courts with deciding whether the parties' intent was camouflaged or "clear and unequivocal."

*Id.* at 658 n.6, 819 S.E.2d at 176 n.6.

of the Subcontractor Defendants [BFS and Respondents], and each of them individually, in one or more of the following particulars:

a. in failing to properly construct the Project by deviating from the plans and specifications and by failing to employ practices and methods of construction conforming with accepted industry standards; and/or using defective material; and/or installing materials not in accordance with the plans and specifications, or in violation of the manufacturer's instructions;

b. in failing to properly supervise their work and the work of other trades in order to ensure that all work proceeded in accordance with the plans and specifications and in conformity with the customary and ordinary standards of the construction industry;

c. in accepting non-conforming or defective material;

d. in using and supplying defective materials;

e. in installing materials not in accordance with the plans and specifications;

f. by installing materials in violation of manufacturer's instructions;

g. in accepting and performing deficient and/or defective workmanship and/or materials without proper inspection to ensure that the work was correct and in conformity with industry standards and in accordance with the plans and specifications and the manufacturer's instructions;

h. in constructing the Project in violation of the applicable building codes; and

i. in failing to inform the architect, owner or general contractor of defects in the plans and specifications

The particulars of negligence alleged at subparts b, c, d, g, and i speak to BFS's duties in its role as a supplier of Project materials as well as the duties of BFS and any subcontractors responsible for supervising, inspecting, and approving the work.

BFS's contractual indemnification claim is found within the following paragraphs of its amended answer to the fourth amended complaint and asserted crossclaim:

133. That the Plaintiff, The Retreat at Charleston National Country Club HOA, Inc., and The Retreat at Charleston National Country Club Horizontal Property Regime, have sued Builders FirstSource-Southeast Group, LLC (hereinafter sometimes "BFS"), asserting damages allegedly caused, inter alia, by deficiencies in framing, including but not limited to deficiencies in the installation of windows, doors, and related components, during original construction of the subject structures.

134. That BFS has denied the material allegations asserted against BFS in the Plaintiffs' Fourth Amended Complaint.

135. That the respective subcontracts between this Defendant and the Cross Claim Defendants, provide for contractual indemnification in favor of BFS.

136. That the Cross Claim Defendants served as subcontractors to BFS in connection with their services at the subject structures. Regardless, therefore, of any specific contractual obligation to indemnify, there exists a special relationship between this Defendant, and the Cross Claim Defendants, sufficient to impose obligations of indemnity against the aforesaid Cross Claim Defendants, in favor of BFS.

137. That to the extent, if any, that BFS may be held liable to the Plaintiffs, or to others in this action, such liability would be a direct and proximate result of the wrongful acts, omissions, negligence, gross negligence, and/or representations of the Cross Claim Defendants, which have damaged BFS, as BFS has been subjected to liability and has incurred consequential damages in having to expend attorneys' fees and costs in defending against the Plaintiffs' claims.

138. That BFS is entitled to *full contractual and common law indemnification from the Cross Claim Defendants, for any liability BFS is found to have to the Plaintiffs or to others in this action, and BFS is also entitled to damages for any negligence, as aforesaid, on the part of the Cross Claim Defendants*, entitling BFS to recover from

the Cross Claim Defendants, its attorneys' fees, costs, and other expenses incurred in defending this action, *and further entitling BFS to recover from the Cross Claim Defendants any sums for which BFS may be held liable to the Plaintiffs or to others*, or which Builders FirstSource-Southeast Group, LLC may pay in satisfaction of such claims.

(emphasis added). Similar language addresses the third-party defendants:

163. That BFS has denied the material allegations asserted against BFS in the Plaintiffs' Amended Complaint.

. . . .

167. That to the extent, if any, *that BFS may be held liable to the Plaintiffs, or to others in this action, such liability would be a direct and proximate result of the wrongful acts, omissions, negligence, and/or representations of the Third-Party Defendants*, which have damaged BFS, as BFS has been subjected to liability and has incurred consequential damages in having to expend attorneys' fees and costs in defending against the Plaintiffs' claims.

168. *That BFS is entitled to full contractual and common law indemnification from the Third-Party Defendants, for any liability BFS is found to have to the Plaintiffs or to others in this action*, and BFS is also entitled to damages for any negligence, as aforesaid, on the part of the Third-Party Defendants, entitling BFS to recover from the Third-Party Defendants, its attorneys' fees, costs, and other expenses incurred in defending this action, and *further entitling BFS to recover from the Third-Party Defendants any sums for which BFS may be held liable to the Plaintiffs or to others*, or which Builders FirstSource-Southeast Group, LLC may pay in satisfaction of such claims.

(emphases added). BFS alleges in its contractual indemnification claims, as well as in conjunction with other claims not at issue on appeal, that it seeks recovery for any sums for which BFS may be held liable to the Plaintiffs or others, in addition to attorneys' fees and costs from Respondents. In our view, the wording of paragraphs 138 and 168 leaves little doubt that BFS's pleadings also seek indemnification for its own negligence.

## A.    2005 Contracts

The sections of the two orders addressing the *Concord & Cumberland* arguments are identical—both found the Section 6 indemnity "language is inherently confusing" and "the language contained in the indemnity clause does not clearly and unequivocally provide for indemnity for BFS's own negligence."  Additionally, both orders provide "the indemnity and duty to defend provisions of the Master Agreement . . . are neither clear nor unequivocal and, thus, fail as a matter of law."

We view the language in Section 6 as inherently confusing insofar as it calls for the 2005 Subcontractors to indemnify BFS for BFS's sole negligence while also claiming to limit the indemnity "to the extent" of the 2005 Subcontractors' own negligence.  Thus, we agree with the circuit court that the language contained in the indemnity clause does not clearly and unequivocally provide for indemnity for BFS's own negligence.  Accordingly, we affirm the circuit court's rulings that the indemnity provisions of the 2005 Contracts are neither clear nor unequivocal, and that BFS's contractual indemnity claims against Palmetto and East Coast fail as a matter of law.

## B.    Later Contracts

In the current case, BFS contends it is not seeking indemnity for loss or damage arising from its own negligence, but rather indemnity only against liability for loss or damage arising from the sole or concurrent negligent acts or omissions of its subcontractors in the performance of their work.  Thus, BFS asserts the clear and unequivocal standard of *Concord & Cumberland* should not apply.  However, our review of the indemnification and defense provisions in Sections 3 and 5 of the Later Contracts—as well as the language of BFS's crossclaims—reveals this not to be so.  Sections 3 and 5 of the Later Contracts neither require any finding of fault on the part of the Later Subcontractors nor exclude any fault of BFS.  Instead, these sections expressly reference indemnification for the sole negligence of BFS.

Moreover, the indemnity provision buried in the fine print of Section 3 of the Later Contracts contains a warranty provision that would allow BFS to seek indemnity for personal injuries and property damage arising from the sole negligence of BFS in selecting and selling the products **BFS provided** to the Later Subcontractors for installation.  Because this indemnity provision is hidden among warranty and guaranty language, we agree with the circuit court that it fails to satisfy the clear and unequivocal standard.

Section 5 of the Later Contracts contains multiple indemnity clauses. The first paragraph of Section 5 is based in part on the same AIA form indemnification language stating "but only to the extent caused in whole or in part by any negligent act or omission on the part of subcontractor." *See Concord & Cumberland*, 424 S.C. at 643–44, 819 S.E.2d at 168–69. As the *Concord & Cumberland* court found, this language does not meet the heightened standard of interpretation for contracts seeking to relieve the indemnitee of the consequences of its own negligence. *Id.* at 658 n.6, 819 S.E.2d at 176 n.6.

Additionally, the second paragraph of Section 5 contradicts the first paragraph by purportedly requiring the Later Subcontractors to indemnify BFS (and others) even if it is alleged that the loss was caused by BFS.[6] The language of these two paragraphs cannot be reconciled. Further, the third paragraph of Section 5 is a disguised indemnity provision for defense costs. By claiming it is *not* seeking indemnification for its own negligence, BFS asks this court to ignore its pleadings and the Later Contracts' language, which it drafted, and to disregard controlling

_____

[6] In its crossclaims, BFS states:

> That BFS is entitled to full contractual and common law indemnification from the Cross Claim Defendants, for any liability BFS is found to have to the Plaintiffs or to others in this action, and BFS is also entitled to damages for any negligence, as aforesaid, on the part of the Cross Claim Defendants, entitling BFS to recover from the Cross Claim Defendants, its attorneys' fees, costs, and other expenses incurred in defending this action, and further entitling BFS to recover from the Cross Claim Defendants any sums for which BFS may be held liable to the Plaintiffs or to others, or which Builders FirstSource-Southeast Group, LLC may pay in satisfaction of such claims.

*See, e.g.*, *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 313 S.C. 283, 289, 437 S.E.2d 163, 166 (Ct. App. 1993) ("It is well settled that parties are judicially bound by their pleadings unless withdrawn, altered[,] or stricken by amendment or otherwise. The allegations, statements, or admissions contained in a pleading are conclusive as against the pleader and a party cannot subsequently take a position contradictory of, or inconsistent with, his pleadings[,] and the facts which are admitted by the pleadings are taken as true against the pleader for the purpose of the action." (quoting *Postal v. Mann*, 308 S.C. 385, 387, 418 S.E.2d 322, 323 (Ct. App. 1992))).

authority.  We find the relevant provisions of the Later Contracts are not sufficiently clear and unequivocal to require the Later Subcontractors to indemnify BFS for BFS's own negligence (to the extent BFS seeks such indemnification).  Accordingly, we affirm the circuit court's rulings that the indemnity provisions of the Later Contracts are neither clear nor unequivocal and that BFS's claims must fail as a matter of law.

## II.    Section 32-2-10 and Public Policy

BFS argues the circuit court erred in finding the contractual language permitting BFS to recover for its subcontractors' negligence violates section 32-2-10 of the South Carolina Code (2007) and public policy.  We disagree.

"The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language."  *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 614, 732 S.E.2d 626, 628 (2012) (quoting *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)).  "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning."  *Id.* (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008)).  "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause."  *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 595, 762 S.E.2d 705, 710 (2014) (quoting *McGill*, 381 S.C. at 185, 672 S.E.2d at 574).

The statute at issue provides, in pertinent part:

> **Notwithstanding any other provision of law, a promise or agreement in connection with the design, planning, construction**, alteration, repair or maintenance **of a building, structure**, highway, road, appurtenance or appliance, including moving, demolition and excavating, **purporting to indemnify the promisee,** its independent contractors, agents, employees, or indemnitees against liability **for damages arising out of bodily injury or property damage proximately caused by or resulting from the sole negligence of the promisee**, its independent contractors, agents, employees, or indemnitees **is against public policy and unenforceable.**  Nothing contained in this section shall affect a promise or agreement whereby the promisor shall indemnify or hold harmless the promisee or the promisee's independent contractors, agents, employees or indemnitees

against liability for damages resulting from the negligence, in whole or in part, of the promisor, its agents or employees.

S.C. Code Ann. § 32-2-10 (emphasis added).

### A.     2005 Contracts

Although § 32-2-10 allowed BFS and the 2005 Subcontractors to agree the 2005 Subcontractors will indemnify BFS for damages caused by the 2005 Subcontractors or their subs, the 2005 Contracts also contain multiple provisions requiring the 2005 Subcontractors to indemnify (or defend) BFS for damages incurred as a result of BFS's sole negligence.  For example, Section 6 calls for the 2005 Subcontractors to unconditionally defend and indemnify BFS in subsection (b)(1) and then calls for the 2005 Subcontractors to indemnify BFS for BFS's failure to supervise in subsection (b)(2).  These provisions violate § 32-2-10 because they seek to require the 2005 Subcontractors to indemnify BFS for its sole negligence.  *See D.R. Horton, Inc.*, 422 S.C. at 152, 810 S.E.2d at 46 ("The indemnification agreement in this case purports to require BFS to indemnify D.R. Horton for its own negligence in violation of section 32-2-10.  Because the agreement violates the statute, we cannot require BFS to pay for damages caused by D.R. Horton.").  And, Section 8(i) of the 2005 Contracts provides for indemnification of attorney's fees and expenses as well as amounts paid in settlement without regard to BFS's fault.  Therefore, we affirm the circuit court's findings as to the public policy and statutory questions.

### B.     Later Contracts

While the statute allows BFS and the Later Subcontractors to agree that the Later Subcontractors will indemnify BFS for damages caused by the Later Subcontractors or their subs, Sections 3 and 5 of the Later Contracts obligate the Later Subcontractors not only to warrant the design and suitability of the defective materials and building components at the Project but also to indemnify and defend BFS from any property damage or personal injury resulting from the water intrusion issues related to the provided materials and building components.[7]

---

[7] The language in Section 3 of the Later Contracts stating, "Subcontractor guarantees the Work against defects in design, workmanship, and materials" only makes sense if the words "design, workmanship, and materials" refer to the defective materials and building components provided by BFS because the Later Subcontractors had no responsibility for the design of the Project or any of its

Additionally, Section 8(i) of the Later Contracts provides for indemnification of attorney's fees and expenses as well as amounts paid in settlement without regard to the fault of BFS. So, the Later Contracts purport to require the Later Subcontractors to indemnify BFS for its own negligence in selecting the framing lumber, housewrap, windows, doors, related flashings, and caulk as well as overseeing and inspecting the installation of the materials it provided for use in constructing the Project. Such a provision violates § 32-2-10. *See D.R. Horton, Inc.*, 422 S.C. at 152, 810 S.E.2d at 46 ("The indemnification agreement in this case purports to require BFS to indemnify D.R. Horton for its own negligence in violation of section 32-2-10. Because the agreement violates the statute, we cannot require BFS to pay for damages caused by D.R. Horton."). Moreover, because the Later Contracts' indemnity provisions require the Later Subcontractors to indemnify BFS against liability for damages from bodily injury or property damage proximately caused by or resulting from the sole negligence of BFS, these provisions are unenforceable under § 32-2-10. For these reasons, we affirm the circuit court for this additional reason.

## III.    Collateral Estoppel[8]

BFS next argues the circuit court erred in finding the doctrine of collateral estoppel bars its indemnity claims because the prior judgments are both inapposite and not final because they have been appealed. We disagree.

Collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue that was "'actually litigated and determined by a valid and final judgment'" in a previous action, "regardless of whether the claims in the first and subsequent suits are the same." *Judy v. Judy*, 383 S.C. 1, 7, 677 S.E.2d 213, 217 (Ct. App. 2009) (quoting *Zurcher v. Bilton*, 379 S.C. 132, 135, 666 S.E.2d 224, 226 (2008)). Where the "illegality of the contract has been actually litigated and directly determined in the prior action and that issue was essential to the judgment," the application of offensive collateral estoppel is appropriate. *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 213, 403

---

components—including the materials. Further, even though BFS provided the structural components, the Later Contracts appear to require the Later Subcontractors to provide a ten-year warranty on "structural applications."

[8] This issue is relevant only to the Later Contracts.

S.E.2d 625, 627 (1991). The party invoking collateral estoppel need not have also been a party in the prior action; the law requires only that the party against whom estoppel is applied have been a party with a full and fair opportunity to litigate the issue. *Id.* ("Nonmutual collateral estoppel may be asserted unless the party precluded lacked a full and fair opportunity to litigate the issue in the first action . . . .").

There is no dispute that BFS is the party seeking to enforce the indemnity clauses of the Later Contracts (which are identical to those previously litigated). It further cannot be disputed that BFS was the party litigating the issue of enforceability in other construction defect cases before the circuit court. The circuit court had previously addressed the Later Contracts' indemnity language in *MI Windows & Doors*, *Dag Pavic and Stela Susas-Pavic*, and *Six Fifty-Six Owners' Association, et al*. Although BFS had appealed these orders, the circuit court did not err in finding the same terms had been actually litigated and directly determined in a prior action. A judgment is final and remains final unless and until it has been overturned on appeal. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) (finding finality of a court's judgment is not lost because appeal is pending unless and until reversed).

The rationale behind this rule is that if cases on appeal were not viewed as final judgments for collateral estoppel purposes, parties could simply refile in trial court while an appeal is pending and hope for a different result, thus subjecting courts (and parties) to inefficient duplicative litigation. *See generally Warwick Corp. v. Maryland Dep't of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983) ("Such a consequence would also be laughable. If a judgment was denied its *res judicata* effect merely because an appeal was pending, litigants would be able to refile an identical case in another trial court while the appeal is pending, which would hog-tie the trial courts with duplicative litigation."), *aff'd Warwick Corp. v. Maryland Dep't of Transp.*, 735 F.2d 1359 (4th Cir. 1984). That appeals were pending at the time of the circuit court's rulings in these eight cases in no way changes the result: the prior findings have preclusive effect unless and until those dispositive findings are reversed. The indemnity clauses in the Later Contracts are the same clauses from the same agreement at issue in *MI Windows & Doors*, *Pavic*, and *Six Fifty-Six Owners' Association*. Because BFS had previously litigated the enforceability of its contractual indemnity provisions, the circuit court properly applied collateral estoppel.

## IV.     Severability

BFS next asserts the circuit court erred in failing to address the severability provision of the 2005 Contracts and the Later Contracts, and where the circuit court did address severability, it erred in holding it lacked authority to sever the offending provisions.[9]  Again, we disagree.

In both sets of contracts, the severability clause states, "The provisions of this Agreement shall be deemed independent and severable, and the invalidity or partial invalidity of any provision or portion thereof shall not affect the validity or enforceability of any other provision or portion thereof."  However, because the indemnity provisions are replete with terms that violate South Carolina law and public policy, these terms cannot be effectively severed.  Among other things, the contracts require the 2005 Subcontractors to indemnify BFS for claims of death, personal injury, and property damage—regardless of BFS's negligence—and require subcontractors to defend BFS in the case of BFS's sole negligence.

Because the indemnity provisions themselves violate South Carolina law, we reject BFS's invitation to rewrite them.  *Cf. Concord & Cumberland*, 424 S.C. at 656, 819 S.E.2d at 175 ("Merging the indemnity clauses into one clause by replacing some language but leaving other language in place would amount to rewriting the indemnity clauses into a contractual term to which Muhler did not agree.  In the absence of clear and express language in the 2007 Agreement instructing what phrases replace specific terms in the [s]ubcontract, we decline Superior's invitation to rewrite the indemnity clauses.  The circuit court properly interpreted each indemnity clause according to its own terms."); *Doe v. TCSC, LLC*, 430 S.C. 602, 615, 846 S.E.2d 874, 880 (Ct. App. 2020) (noting "[c]ourts have discretion . . . to decide whether a contract is so infected with unconscionability that it must be scrapped entirely, or to sever the offending terms so the remainder may survive").

## V.    Unconscionable and Unenforceable

Finally, BFS argues the circuit court erred in finding the warranty, contractual indemnity, and duty to defend provisions of the Later Contracts are unconscionable and unenforceable as a matter of law.  We disagree.

"[U]nder general principles of state contract law, an adhesion contract is a standard form contract offered on a 'take-it-or-leave-it' basis with terms that are not negotiable."  *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 26–27, 644 S.E.2d 663, 669 (2007).  In *Simpson,* our supreme court found an arbitration clause

---

[9] The language of Section 9(f) is the same in the 2005 and Later Contracts.

in an adhesion contract with unconscionable terms "wholly unenforceable," despite the presence of a separate contractual severability clause, due to the "cumulative effect of a number of oppressive and one-sided provisions contained within the entire clause." *Id.* at 33–36, 644 S.E.2d at 673–74. The contractual severability provision did not result in an exception to the general rule of unenforceability of illegal contracts, especially where the contract was one-sided, oppressive, or a contract of adhesion. *Id.* at 29–30, 644 S.E.2d at 671.

In *Damico v. Lennar Carolinas, LLC*, our supreme court emphasized the distinction between a contract of adhesion and the question of unconscionability:

> [*A*]*dhesive contracts are not unconscionable in and of themselves so long as the terms are even-handed*. Nevertheless, and regrettably, it is common practice for the sophisticated drafter of contracts to routinely argue that a particular contract is not one of adhesion when that is plainly untrue. Such a specious argument does not advance the party's position and instead detracts from other legitimate arguments the party may have. After all, unconscionability requires a finding of a lack of meaningful choice *coupled with* unreasonably oppressive terms. Thus, an adhesion contract with fair terms is certainly not unconscionable, and the mere fact a contract is one of adhesion does not doom the contract-drafter's case.

437 S.C. 596, 614, 879 S.E.2d 746, 756 (2022).

The Later Subcontractors installed products for BFS, the regional division of Builders FirstSource, arguably a sophisticated drafter of contracts given its regional reach and its multiple subcontractor contracts on several Lowcountry projects. As discussed in sections I and II, *supra*, the warranty, guaranty, and indemnity provisions of the Later Contracts violate § 32-2-10, are ambiguous, conflict with each other, and do not meet the clear and unequivocal standard articulated in *Concord & Cumberland*.

The disparity in bargaining power along with the ambiguous terms in these adhesion contracts deprived the Later Subcontractors of any meaningful choice when entering the Later Contracts. The Later Contracts give the drafter expansive rights and remedies, while creating oppressive obligations or liabilities for the Later Subcontractors *and* limiting or waiving their rights. We find it inconceivable that a subcontractor with even a semblance of bargaining power who understood the implications of the language in these agreements would sign them

unless there existed a total absence of meaningful choice. Accordingly, we affirm the circuit court's findings that the pertinent provisions of the Later Contracts are unconscionable and unenforceable as a matter of law.

**Conclusion**

For the foregoing reasons, the circuit court's eight orders are

**AFFIRMED.**

**THOMAS, J., and VERDIN, A.J., concur.**